UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
SHEILA SIMMONS & MARIE LAUTURE,                Index No. 24-CV-7129

                          Plaintiffs,

                                                         **FIRST AMENDED**
-against-                                                **COMPLAINT**

SUNCO CAPITAL, LLC; ATTYX, LLC; ATTYX, LLC               **JURY TRIAL**
d/b/a SUNCO CAPITAL, LLC and SUNCO SOLAR;                **DEMANDED**
SOLAR MOSAIC, LLC; WEBBANK; and
REGIONS/ENERBANK USA d/b/a ENERBANK
USA,
                          Defendants.
--------------------------------------------------------------------X

   Plaintiffs Sheila Simmons and Marie Lauture, through their attorneys, Cardozo Bet Tzedek

Legal Services and JASA|Legal Services for Elder Justice, bring this Complaint against

Defendants SUNco Capital, LLC ("SUNco"), ATTYX, LLC, individually and d/b/a SUNco

Capital, LLC and SUNco SOLAR ("SUNco"), Solar Mosaic, LLC ("Mosaic"), WebBank

("WebBank"), and Regions/EnerBank USA d/b/a EnerBank USA ("EnerBank").

## **PRELIMINARY STATEMENT**

   1.  Plaintiffs Marie Lauture and Sheila Simmons are elderly, Black Homeowners,

living on limited fixed-incomes, and residing in Queens, New York. In the fall of 2022 and 2023,

respectively, SUNco representatives approached Ms. Lauture and Ms. Simmons with offers:

SUNco would perform roof repairs while at the same time installing solar panels that would

substantially reduce their monthly electric bills. In addition, SUNco represented that Plaintiffs

would only pay a fraction of the total project costs because most would be covered by various

government tax benefits and rebates automatically available to senior citizens. The proposal was

presented to each Plaintiff verbally. During their respective meetings, each Plaintiff was asked to

sign an electronic device. Defendants subsequently forged the Plaintiff's respective signatures on installation agreements and loan documents that Plaintiffs never knew about, consented to, or authorized.

2.     Neither Plaintiff was provided with any documentation before SUNco began its work.

3.     Months after construction concluded, Ms. Lauture and Ms. Simmons received bills from lending companies they had never heard of, for loans they never authorized, and discovered that these lenders had placed liens on their homes, encumbering their title.

4.     Now, both Ms. Lauture and Ms. Simmons are being told that they are responsible for predatory loans to which they never agreed. Because of their limited incomes, Plaintiffs are unable to pay these alleged debts to Defendants while also paying for essential needs and housing expenses.

5.     Ms. Simmons and Ms. Lauture bring claims against Defendants under the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, et seq., the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, et seq., the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et. seq.*, New York General Business Law ("GBL") § 349, New York GBL § 349-c, New York General Business Law GBL §§ 770-771, New York's Uniform Commercial Code ("NY UCC") § 9-9-509, and common law fraud, forgery, and fraud rising to the level of forgery. Ms. Simmons and Ms. Lauture are seeking relief in the form of rescission of any and all alleged agreements between themselves and Defendants, actual, statutory and punitive damages, reasonable attorney's fees, costs, and litigation expenses, pre-judgment and post-judgment interest to the extent allowable by law, and such further relief as this Court finds just and proper.

6.    Without such essential relief, Plaintiffs will remain victims of Defendants' predatory actions, and at serious risk of losing their homes.

## JURISDICTION AND VENUE

7.    Jurisdiction arises under 28 U.S.C. § 1331 because this Court has original jurisdiction over the federal claims under TILA, ECOA, and FCRA.

8.    Supplemental jurisdiction over the state law claims arises under 28 U.S.C. § 1367(a).

9.    Venue is proper because the acts complained of occurred in this district.

## PARTIES

10.    Plaintiff Marie Lauture is a 73-year-old, Black homeowner who resides at 188-17 119th Road, Queens, New York 11412.

11.    Plaintiff Sheila Simmons is a 75-year-old, Black homeowner who resides at 145-04 Lakewood Avenue, Queens, New York 11435.

12.    Defendant SUNco Capital, LLC was a domestic limited liability company that provided roofing, solar, HVAC, and other energy-related residential construction services. SUNco Capital, LLC's principal office was located at 150 Eileen Way, Suite 5, Syosset, New York 11791. SUNco Capital, LLC's President and Owner was listed as Grant Young. Although, upon information and belief, several years ago, SUNco Capital, LLC was acquired by or became ATTYX, LLC, Defendant SUNco Capital, LLC entered into the transactions challenged in this lawsuit in its own name.

13.    Defendant ATTYX, LLC, individually and/or d/b/a/ SUNco Capital, LLC, and SUNco Solar, LLC, is a domestic limited liability company with a principal office also located at 150 Eileen Way, Suite 5, Syosset, New York 11791. New York Department of State documents

indicate that Grant Young is ATTYX's President and Owner, ATTYX, LLC, acquired or was created from SUNco Capital, and ATTYX, LLC., also has the assumed name, "SUNCO SOLAR, LLC." SUNco Capital, now ATTYX, LLC, entered into the transactions challenged in this lawsuit in its own name.

14.     For the purposes of this Complaint, Defendants SUNco Capital, LLC; ATTYX, LLC individually and d/b/a SUNco Capital, LLC, and SUNCO SOLAR, will collectively be referred to as "SUNco"

15.     Defendant Regions/EnerBank USA d/b/a EnerBank USA ("EnerBank") is a "specialized home improvement lender" that provides loans for homeowners and contractors. EnerBank's name appears on an alleged loan to Ms. Lauture. The bank's principal office is located at 1245 Brickyard Road, Suite 600, Salt Lake City, Utah, 84106. Enerbank's website notes that as of October 1, 2021, Regions Financial Corporation acquired EnerBank. Regions is a consumer and commercial banking company with a principal office located at 1900 5th Avenue North, Birmingham, Alabama 35203. Despite the merger, EnerBank continues to conduct business in its own name.

16.     Defendant WebBank is a foreign business corporation that issues consumer and business loans, through its "Brand Partners" or "Brand Platforms," including Defendant Mosaic. WebBank's name appears on an alleged loan to Ms. Simmons. WebBank's principal office is located at 215 South State Street, Suite 1000, Salt Lake City, Utah, 84111.

17.     Defendant Solar Mosaic ("Mosaic") is a foreign limited liability company that provides financing for homeowners through a national network of partners that includes WebBank. Mosaic's principal office is located at 601 12th Street, Suite 325, Oakland, California 94607. Upon information and belief, Mosaic is a partner of SUNco.

4

18.     Upon information and belief, the SUNco defendants and lenders Mosaic and WebBank, and the SUNco defendants and EnerBank, are engaged in joint schemes to defraud Plaintiffs and/or have a knowing, interdependent, and mutually beneficial relationship that is based on SUNco's scheme to defraud Plaintiffs. SUNco recruits customers through fraud and misrepresentation and Defendant lenders Mosaic, WebBank, and EnerBank, advance funds to SUNco and profit from their deliberately misleading sales tactics. At all relevant times, SUNco acted on behalf of and for the benefit of the Defendant lenders or carried out their activities with the knowledge and consent of the Defendant Lenders.

## FACTUAL ALLEGATIONS

**Marie Lauture**

19.     Ms. Lauture is a 73-year-old, Black homeowner who resides alone at 188-17 119th Road, Saint Albans, New York, 11412 ("the Lauture Home"). In December 1990, Ms. Lauture purchased the Lauture Home with her husband, as a place to raise their children. Since her husband passed away in 2012 and her children moved out, Ms. Lauture has lived alone. Ms. Lauture lives on a limited fixed income and is solely responsible for all remaining mortgage payments, utilities, and costs associated with the property.

20.     In or around early September 2022, a SUNco sales representative, upon information and belief, targeted Ms. Lauture for solicitation. He knocked on her door to inform her that SUNco was offering low-cost roof repairs and solar panel installation that would lower the cost of her electric bills.

21.     SUNco 's sales agent told Ms. Lauture that, because she was a senior citizen, she would automatically qualify for federal and state government rebates and tax credits so the actual cost to her of the project (to repair her roof and install solar panels) would be only $10,000.00. The SUNco representative told Ms. Lauture that she would be enrolled in an installment plan

allowing her to make monthly payments of $100.00 for 100 months to pay off her $10,000.00 obligation. Ms. Lauture was told that she would not have to start making payments for a while under SUNco's special promotion.

22.    Ms. Lauture told SUNco's representative that she would like to have the work performed on these stated terms. Ms. Lauture was not given a breakdown in writing, nor was Ms. Lauture provided with a contract. Upon information and belief, the overall cost presented to Ms. Lauture was $10,000.00.

23.    Upon further information and belief, SUNco, by and through its agent, knowingly presented Ms. Lauture this $10,000.00 figure based on financial incentives that they stated were "automatically available to her as a senior citizen" with the intent to induce her reliance on it. Upon information and belief, SUNco, by and through its agent, knew this figure was patently false and misleading.

24.    Instead, it appears that these alleged incentives were nonexistent or grossly overstated, and they would not be automatically applied to reduce the cost to Ms. Lauture to $10,000.00 as the representative led her to believe.

25.    After discussing the reduced project cost, on or about September 2022, the representative requested that Ms. Lauture sign a blank document on his electronic device. On that day, Ms. Lauture signed that blank document and never signed or received any other documents. After obtaining Ms. Lauture's signature, the representative asked her for a voided check, which he explained he would need to eventually set up the installment payment plan.

26.    During that meeting, the SUNco sales representative did not provide Ms. Lauture with any written documentation about the construction project or the installment agreement.

27.     Shortly after this first visit, the SUNco sales representative visited Ms. Lauture's Home a second time to discuss the style and color of the roof shingles. On this second visit, the sales representative did not provide Ms. Lauture with any other information about the project or the government tax benefits and rebates, nor did he provide her with any written documents. Ms. Lauture continued to believe she was proceeding with the $10,000.00 project the SUNco representative presented to her at their first meeting.

28.     Because she was not given any written documents, Ms. Lauture was not given notice of any three-day right to cancel.

29.     Shortly thereafter, SUNco workers came to the Lauture Home and performed some of the promised roof work and installed solar panels.

30.     In early 2024, Ms. Lauture received a call from a representative at EnerBank, a company she had not previously heard of. The EnerBank representative informed Ms. Lauture that it had paid SUNco $45,000.00, the alleged cost of Ms. Lauture's roof repairs and solar panel installation. Enerbank claimed that Ms. Lauture was now indebted to EnerBank for a $45,000.00 loan--a loan Ms. Lauture did not know about, take out, or authorize.

31.     In or about March or April 2024, Ms. Lauture first received a purported "loan agreement" from EnerBank. This document showed a loan of $45,000.00 with an Annual Percentage Rate of 4.49 percent and a total finance charge of $33,132 .00. Under the terms of this alleged loan, rather than having incurred an expense of $10,000 to be paid in monthly installments for 100 months, Ms. Lauture would owe EnerBank a total amount of $78,132.00, with monthly payments of approximately $260.44 for 300 months, with accruing interest on unpaid amounts and late fees.  Upon information and belief, the alleged repayment period on this purported loan began

in or about December 2023. The loan cost page of this alleged loan agreement is attached as Exhibit A.

32.     This alleged "loan agreement," dated September 5, 2022, contained Ms. Lauture's forged electronic signature. Ms. Lauture never knew about, or consented to, the unauthorized use of her digital signature being placed upon any documents associated with EnerBank or any third-party lending company, and to date, she has not made any payments on this unauthorized loan.

33.     Interest allegedly continues to accrue on this unauthorized and fraudulent loan and, according to Enerbank, is being incorporated into the principal amount. For example, a March 20, 2024, demand letter sent to Ms. Lauture by EnerBank, informed her that the total balance allegedly due on the principal amount had increased to $47,940.83 and that she had allegedly incurred late fees of $90.00.

34.     Any monies supposedly advanced by Enerbank to SUNco or any other entity in conjunction with work performed on the Lauture Home arose from forged and fraudulent documents unknown to Ms. Lauture.

35.     If not misled, Ms. Lauture would have never have even discussed having solar panels installed on her home. Ms. Lauture would have significant difficulty paying these monthly loan amounts from her limited income, and she certainly would not have agreed to pay $33,132 in finance charges, an amount exceeding three times what she understood as the total project cost.

36.     Unbeknownst to Ms. Lauture, on December 6, 2022, according to the Automated City Register Information System ("ACRIS") records, EnerBank recorded a lien on the Lauture Home with the NYC Office of the City Register. This alleged lien encumbers Ms. Lauture's title.

37.     This "lien" was placed on the Lauture Home before her first payment was allegedly due in or about February 2024.

38.    Upon information and belief, this EnerBank loan and lien is interfering with her right of control of her home and negatively impacting her credit, such as when she was recently denied a loan to repair her leaking water boiler.

39.    Ms. Lauture is a 73-year-old victim of forgery and fraud. She was fraudulently placed in an installation contract and a loan in her name was procured by forgery. Ms. Lauture never saw, authorized, or signed any agreement with the Defendants. And yet, Ms. Lauture is being assessed fees and subjected to demands for payment on an amount that was never disclosed and was knowingly misrepresented to her. In addition, her property is now encumbered by an alleged lien that she never authorized. This alleged lien is damaging to her credit and interfering with her ability to obtain legitimate financing. As a result, Ms. Lauture has been experiencing significant mental and emotional distress over Defendants' actions that have saddled her with an unaffordable and growing unauthorized loan, impaired credit, and the loss of control over her property.

**Sheila Simmons**

40.    Ms. Simmons is a 75-year-old, Black homeowner. In 1986, Ms. Simmons purchased her home at 145-04 Lakewood Ave, Jamaica, New York 11435 ("the Simmons Home") with her now-deceased husband. Ms. Simmons now lives there with some of her children and grandchildren. Part of the first floor is rented out to a barbershop.

41.    Ms. Simmons has a limited income.

42.    Ms. Simmons is responsible for paying the building's property taxes, homeowner's insurance, mortgage, heat and water. She pays the electric bill for her unit and the common areas of the building. She is also currently supporting one of her adult children.

43.    Upon information and belief, in or about early October 2023, SUNco representative and agent Gary Lamb ("Lamb") visited the Simmons Home and presented her with information

about SUNco's roof and solar panel work. He promised Ms. Simmons that the solar panels would significantly reduce her energy costs, that government incentives would cover most of the costs of SUNco's work, and that her out-of-pocket expenses would be limited. Lamb also mentioned that Ms. Simmons would not need to make any payments immediately because of a "promotional period" that was part of the deal.

44.     No agreement between Ms. Simmons and Lamb regarding SUNco's work on the Simmons Home was made during this visit.

45.     On or about October 10, 2023, Lamb returned to the Simmons Home. Once again, Lamb promised that alleged tax incentives and rebates would reduce the overall cost of the installation to Ms. Simmons. Lamb had Ms. Simmons sign on his electronic device to allegedly confirm her eligibility for these alleged government rebates. Lamb did not provide Ms. Simmons with any written documents, nor did he provide any additional information.

46.     Relying on Lamb's false representations, Ms. Simmons expected to pay a minimal amount for the project. Ms. Simmons agreed orally that SUNco could proceed with the project as long as her out-of-pocket cost would be low and her energy bill would be significantly reduced, as promised.

47.     Ms. Simmons asked Lamb for a hard copy of the document she electronically signed, and he said he would e-mail it to her. Upon information and belief, SUNco never e-mailed Ms. Simmons any document relating to her eligibility for government incentives—the document she purportedly signed.

48.     In fact, upon information and belief, neither Lamb nor SUNco ever gave Ms. Simmons *any* paperwork regarding the Simmons Solar project prior to commencement of the work. Therefore, Ms. Simmons was also never provided with notice of her three-day right of cancellation.

49.    As part of the project, Lamb represented that gutter repair work would be included as well as repairs to the perimeters of her skylights on the roof. At no point was removal or covering of the skylights discussed.

50.    Upon information and belief, in November 2023, a group of workers appeared at the Simmons Home. They spent the day working on Ms. Simmons's roof and installing solar panels. They did not work on the gutters, as promised.

51.    During the course of the work, the SUNco workers removed the three skylights, which had long been crucial in providing light to the Simmons' home, and replaced them with porous, wooden planks. When Ms. Simmons discovered that the skylights had been removed, she complained to one of the workers because she had never consented to their removal. The worker informed Ms. Simmons that they were not instructed to leave the skylights.

52.    Ms. Simmons requested that the workers contact Lamb so that she could alert him to this problem. They said they could not assist her. When she tried to reach Lamb at the phone number he had given her, no one answered her call, and an automated message informed her that Lamb's voicemail box was full.

53.    At around 4:00 pm, the workers left. The work was not completed, no gutter repairs were made, the wooden planks remained on the Simmons Home, and the skylights were not replaced. To date, SUNco has not repaired this damage, and Ms. Simmons is suffering because the planks leak, causing mold, mildew, and rotting, and allow for heat loss during the winter. See photos attached as Exhibit B.

54.    In addition, the SUNco workers installed new breaker boxes in a location visible to passersby, and in a position that interfered with the use of her entrance gate. Ms. Simmons had to install her own lock to prevent theft and modify the gate to account for the position of the boxes.

55.     Because the job was incomplete and poorly performed, Ms. Simmons tried again to contact Lamb, with no success. In fact, since his two visits in October 2023, Ms. Simmons has neither seen nor been able to reach Lamb, despite many efforts to do so.

56.     During one of her attempts to reach Lamb, Ms. Simmons spoke with a SUNco representative, who informed Ms. Simmons that she could receive a one-thousand-dollar ($1,000.00) award for referring her neighbors and friends for SUNco services.

57.     Ms. Simmons only obtained an alleged agreement about the SUNco installation project months after the work was performed. The "agreement" includes a boilerplate description of the scope of work, along with the net system cost and the alleged automatic tax incentives and rebates that reduce the cost. As with the breakdown obtained by Ms. Lauture, the SUNco agreement vastly overstates the deductions from rebates and tax incentives. The agreement promises the following deductions: Solar Generating Equipment Federal Tax Credit of $21,630.00, Solar Generating Equipment State Tax Credit of $5,000.00, and New York City Property Tax Abatement of $21,630.00—close to $50,000 in alleged cost reductions.

58.     Upon information and belief, none of these programs would provide deductions as high as promised.

59.     In February 2024, Ms. Simmons received a bill from "Mosaic" informing her that she allegedly owes them $72,100.00 for funds that Mosaic had paid to SUNco on her behalf. Ms. Simmons had not previously seen the name Mosaic or heard of this company, nor did she sign any agreement with them.

60.     In addition, Ms. Simmons was extremely upset because at no time had she agreed with SUNco to any project costing $72,100.00. Although the Mosaic bill stated that no payments were currently due on this loan, it specified a "Suggested Payment" of $8,011.12, to be paid toward

her total outstanding balance of $72,100.00. She has received subsequent purported bills from Mosaic showing increasing amounts of accrued interest. To date, none of the bills have indicated that any payments are allegedly currently due, and she has not made any payments to Mosaic. However, the interest and principal balance have increased throughout the "promotional period." For example, an August 19, 2024, Mosaic bill continues to state that no payments were due but provided a "Suggested Payment" of $24,033.34 and accrued interest in the amount of $3,918.56. See Mosaic bill dated August 19, 2024, attached as Exhibit C.

61.    In July 2024, months after the SUNco agents performed their incomplete work on the Simmons Home, Mosaic sent Ms. Simmons a copy of a forged loan agreement. That "agreement" alleges that she borrowed $72,100.00 from WebBank c/o Mosaic for its payment to SUNco on her behalf, and that this loan had a $95,000.00 Finance Charge based on a 7.24% APR, with total payments on the loan of $167,512.68 to be paid over a period of 299 months. The $95,000.00 finance charge alone is $22,900.00 higher than the amount allegedly borrowed. The loan cost page of this loan agreement is attached as Exhibit D.

62.    This "loan agreement" falsely reads that it was entered into between the borrower (Ms. Simmons) and WebBank, and that payment of the disputed balance is due to WebBank c/o Mosaic. Upon information and belief, this was a Mosaic-branded loan issued by WebBank. At no time did Ms. Simmons enter into any loan agreement with the Defendants.

63.    On or about August 30, 2024, Ms. Simmons finally reached a SUNco representative. That day, a SUNco representative informed Ms. Simmons that she needed to have guardrails installed by September 30, 2024, to obtain the New York City Buildings Department's approval for the promised financial benefits.

64.     On September 3, 2024, workers came to the Simmons Home and installed guardrails on about half of the roof. Ms. Simmons requested documents related to the work, but the workers told her that they had nothing to give her.

65.     Later that month, Ms. Simmons reached a SUNco representative to complain that she had not yet seen any reduction in her electric bills and that she had not received any of the promised cost reductions from the government incentives. The representative told her that "things weren't completed until recently." The representative discussed a confusing, multi-step process for requesting government approvals and filing tax forms. The representative further promised that Ms. Simmons's bills would be reduced and advised her that she would be contacted at a later date.

66.     Upon information and belief, to date, Ms. Simmons has not received any further communications from any Defendants about the rebates and other incentives.

67.     To date, Ms. Simmons has not received any government rebates or benefits.

68.     Ms. Simmons has not made a payment to either SUNco or Mosaic, though the purported loan payment amount continues to grow. Upon information and belief, under the alleged agreement Ms. Simmons first payment on the loan was "due" on November 17, 2024.

69.     Additionally, while Ms. Simmons was never informed about WebBank, Mosaic or any alleged loan, public records on ACRIS indicate that Mosaic is the secured party on the lien filed against the Simmons Home, which was recorded on November 21, 2023—prior to the completion of work on the Simmons home, and eight or nine months before she received a copy of the alleged loan agreement. While Mosaic is the secured party on the lien against the Simmons Home, the alleged loan agreement states that the purported agreement was between Ms. Simmons and WebBank.

70.     Ms. Simmons is a victim of fraud and forgery. She was fraudulently placed in an installation contract and a loan in her name was procured by forgery. Prior to July 2024, Ms. Simmons never saw, authorized, or signed any agreement with any of the Defendants and yet, Ms. Simmons is being subjected to demands for payment on an amount that was knowingly misrepresented to her. In addition, her property is now encumbered by an alleged lien on a loan that was never authorized. As a result, Ms. Simmons has been experiencing significant mental and emotional distress over an unaffordable and growing alleged loan that impacts her credit, a lien that impairs her control over her property, and SUNco's damage to her property that she must remedy at significant cost. Ms. Simmons has suffered financial damage due to the need to repair SUNco's damage to her property.

**The Joint Schemes to Defraud Plaintiffs Involved Coordinated, Consumer-Oriented and Materially Misleading Practices That are Injuring Plaintiffs and Consumers At Large.**

71.     Upon information and belief, the SUNco defendants and lenders Mosaic and WebBank, engaged in a joint scheme to defraud Plaintiff Simmons and/or have a knowing, interdependent, and mutually beneficial relationship reliant on SUNco's scheme to defraud consumers.

72.     Upon information and belief, the SUNco defendants and EnerBank engaged in joint scheme to defraud Plaintiff Lauture and/or have a knowing, interdependent, and mutually beneficial relationship reliant on SUNco 's scheme to defraud consumers.

73.     WebBank's    website    lists    Mosaic    as    a    "Brand    Partner,"    *see*, https://www.webbank.com/brand-partners (last visited 11/21/2024), and Mosaic is the secured party on the lien stemming from WebBank's alleged loan secured by the Simmons Home.

74.     Upon further information and belief, Defendant SUNco misleads and defrauds consumers like Plaintiffs into agreeing to roof repairs and the installation of solar panels based

upon material misrepresentations about, *inter alia*, the true costs of the work, the availability and applicability of governmental incentives and tax benefits, the terms of payment, and the extent of repair work SUNco will perform.

75. SUNco then deceives these consumers into applying a signature to an electronic device under the pretense that the signature will be used for a non-nefarious purpose, i.e., to prove that the SUNco agent spoke with the consumer and/or to verify consumer eligibility for the promised government incentives.

76. Once obtained, the consumer's electronic signature is used, without their knowledge or consent and forged onto SUNco installation agreements and loan documents with Defendants WebBank, Enerbank, and/or Mosaic.

77. Upon information and belief, Defendant lenders then tender funds to SUNco and create predatory loans in the consumer's name, all without their knowledge and consent. Defendants Enerbank, WebBank, and/or Mosaic also cause unauthorized liens to be filed against the consumer's home.

78. Upon information and belief, as part of their joint ventures, Defendants rely upon SUNco sales agents to obtain information about and from consumers, including but not limited to credit information, during their deceptive sales interactions.

79. At all relevant times, Defendant SUNco controlled, and retained the right to control, the conduct of their sales agents, including the manner of their customer acquisition, presentation, the products and "services" offered, and the terms and conditions of such products and services.

80. At all relevant times, SUNco acted on behalf of and for the benefit of the Defendant lenders. The Defendant lenders have acted on behalf of and for the benefit of SUNco.

81.     Defendants have ratified, approved of, and assumed responsibility for the conduct and acts of the other Defendants and their agents.

82.     Defendants financially benefit from their interdependent relationship at the expense of Plaintiffs and other consumers at large.

83.     Defendants' joint  schemes are pervasive and directed at consumers at large. Since 2023, civil lawsuits, including some initiated by various State Attorneys General, have been commenced against Defendants for engaging in these abusive and fraudulent lending practices.

84.     Public reports and lawsuits provide further evidence of Defendants' scheme. For example, since 2023, the Minnesota, Kentucky, and Tennessee Attorneys General have all sued Mosaic for engaging in misleading lending practices. *See*, *State of Minnesota v. GoodLeap LLC, et al*., Docket No. 24-CV-3558 (D. Minn. 2024) [hereinafter, "*Goodleap LLC*"]; *State of Tennessee and Commonwealth of Kentucky v. Ideal Horizon Benefits, LLC, et al.,* Docket No. 23-CV-46 (E.D. TN. 2023) [hereinafter, "*Ideal Horizon Benefits, LLC*"]. And, recently, an action was brought in this court against Defendants SUNco, WebBank, and Mosaic, for targeting an elderly, Black, Queens homeowner with deceptive and misleading home improvement contracting and lending practices. *Campbell v. Solar Mosaic, LLC et al*., Docket No. 24-CV-6208 (E.D.N.Y. 2024) (LDH)(VMS) [hereinafter, "*Campbell*"].

85.     Defendants' scheme is consistent with patterns of deceptive conduct that are widespread within the solar industry. In an August 2024 Consumer Finance Protection Bureau Report ("CFPB") on Solar Financing, the CFPB detailed widespread deceptive practices by solar panel companies like Defendants. The CFPB disclosed details about companies providing solar loans with hidden markups and fees, and extensive misrepresentations by these companies about alleged government tax benefits and incentives to reduce the consumer's construction costs. These

companies also deceive homeowners about alleged reductions in utility expenses associated with solar panel installation. See CONSUMER FINANCIAL PROTECTION BUREAU, *Solar Financing,* (Aug. 7, 2024), https://www.consumerfinance.gov/data-research/research-reports/issue-spotlight-solar-financing.

86.    The August 2024 CFPB Report determined that increased use of solar panels in the United States has coincided with rising abuse by solar panel companies, particularly with respect to overall costs and loan agreements. Specifically, the report warns that companies providing solar loans routinely misrepresent the project costs by falsely claiming government incentives would reduce net cost. See CFPB, *Solar Financing.*

87.    In September 2024, Claver Campbell, an elderly, Black, Queens homeowner commenced an action against SUNco, WebBank, and Mosaic for deceptive practices based on their role in signing Ms. Campbell up for solar panel installation and roof repairs by promoting misleading information about the total costs of construction, eligibility for government benefits, terms of payment, and potential energy savings. As here with Ms. Lauture and Ms. Simmons, the Campbell complaint further alleges that the same Defendants as in this action forged Ms. Campbell's electronic signature on predatory loan agreements. See *Campbell.*

88.    Between 2021 and 2024, approximately 71 complaints have been filed against SUNco with the Better Business Bureau. These complaints detail multiple allegations that SUNco engaged in fraudulent and deceptive business practices, including claims that SUNco misrepresented the cost of construction to customers, and performed poor-quality construction services that damaged roofs. See BETTER BUSINESS BUREAU, *Business Profile: SUNco Solar*, https://www.bbb.org/us/ny/syosset/profile/solar-installation/SUNco-solar-0121-87146048    (last visited, Oct. 31, 2024).

89.    Between 2022 and 2024, approximately 543 complaints have been filed against Mosaic with the Better Business Bureau. These complaints detail multiple allegations that Mosaic engaged in fraudulent and deceptive lending practices, including claims that Mosaic's loan documents contained forged signatures of customers. See BETTER BUSINESS BUREAU, *Business Profile: Solar Mosaic LLC*, https://www.bbb.org/us/ca/oakland/profile/financial-services/solar-mosaic-llc-1116-444414 (last visited, Oct. 31, 2024).

90.    Between 2021 and 2024, approximately 366 complaints have been filed against WebBank with the Better Business Bureau. The publicly available complaints detail allegations that WebBank engaged in deceptive banking practices. See BETTER BUSINESS BUREAU, *Business Profile:* WebBank, https://www.bbb.org/us/ut/salt-lake-city/profile/bank/webbank-1166-2009016/complaints (last visited, Oct. 31, 2024).

91.    Between 2021 and 2024, approximately 1,030 complaints have been filed against EnerBank and Regions Bank, which acquired EnerBank in 2021. These complaints detail multiple allegations that EnerBank and Regions engaged in fraudulent and deceptive lending practices. See BETTER BUSINESS BUREAU, *Business Profile: EnerBank USA,* https://www.bbb.org/us/ut/salt-lake-city/profile/loans/enerbank-usa-1166-22001531 (last visited Oct. 31, 2024).

**SUNco, ATTYX, WebBank, EnerBank, and Mosaic Employ Discriminatory Practices that Target Older Adults and Homeowners of Color.**

92.    Upon further information and belief, Defendant SUNco targets elderly persons of color and profits from misleading and defrauding these consumers into agreeing to home improvements based upon the material misrepresentations described above.

93.    Upon information and belief, SUNco employs advertising practices that specifically target senior homeowners and homeowners of color. For example, on the SUNco website home page, suncoproject.com, as it appeared through at least September 18, 2024, four of

19

the five representative SUNco customers were Black. In the latter part of September 2024, SUNCo updated its website, suncoproject.com, to automatically reroute visitors to ATTYX.com., which has a different landing page.

94.    Upon information and belief, SUNco had sales representatives focus their efforts on communities with majority Black residential populations, such as Jamaica and St. Albans where the Plaintiffs live. According to U.S. government census data, approximately 57% of residents in Jamaica and St. Albans—the area of Queens where both Plaintiffs reside—identify as Black, and approximately 90% identify as persons of color. *See* DATA USA: NYC-Queens Community District 12–Jamaica, St. Albans, & Hollis PUMA, NY (https://datausa.io/profile/geo/nyc-queens-community-district-12-jamaica-st-albans-hollis-puma-ny?pums5RacesPyramid=pums5Race2) (last visited Nov. 15, 2024). Upon information and belief, SUNco's deceptive marketing targets these neighborhoods and, as a result, is highly likely to ensnare Black homeowners and homeowners of color. Defendants' targeted operation in these neighborhoods is further evidenced by SUNco's offer of financial incentives, including but not limited to one-thousand-dollar ($1,000.00) rewards, to customers such as Ms. Simmons, for referring their neighbors and friends for SUNco services.

95.    In addition, in multiple reviews and complaints posted on the Better Business Bureau website's profile, consumers allege that SUNco representatives specifically advertised tax benefits and programs for older and retired individuals and lured senior citizen customers with promises that they would qualify for "senior citizen" rebates and tax credits that they never received, leaving them with significantly higher monthly payments than promised by the SUNco agents. See, e.g., *Business Profile: SUNco Solar.*

96.     Upon information and belief, Defendant lenders EnerBank, WebBank, and Mosaic knew or should have known that SUNco was targeting seniors and minority homeowners with deceptive sales pitches that did not provide an accurate description of the amount the homeowners would owe for the work. Further evidencing their knowing participation in this scheme, Defendants EnerBank, WebBank, and Mosaic, upon information and belief, allegedly provided loans on behalf of these homeowners, and tendered funds to SUNco, without any direct contact with consumers like Plaintiffs to determine their creditworthiness, inform them of the terms of the loans, or obtain authorization to use their homes as collateral and file liens on the property.

97.     All Defendants financially benefitted from SUNco's deceptive marketing to elderly homeowners of color to the homeowners' detriment.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE TRUTH IN LENDING ACT

### (Against SUNco)

98.     Plaintiffs reallege and incorporate all foregoing facts and allegations as if fully set forth herein.

99.     This is a consumer protection action for rescission and damages under the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1601.

100.    The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

101.    TILA governs the conduct of "creditors," defined as one who both "regularly extends...consumer credit, which is payable by agreement in more than four installments or for

which the payment of a finance charge is or may be required, and is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness, or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. §1602.

102.    TILA mandates that lenders accurately disclose certain "costs of credit" associated with transactions at the time of their consummation. Specifically, pursuant to 15 U.S.C. §1638(b), a creditor must disclose to the consumer the following information in writing, *prior to the extension of credit*:

a.   "The identity of the creditor required to make disclosure." 15 U.S.C. §1638(a)(1).

b.   The "amount financed,." specifically using that term and providing a "descriptive explanation." 15 U.S.C. §1638(a)(2)(A).

c.   "[A] statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed," with "yes/no" spaces included for the consumer to accept or reject this option.  15 U.S.C. §1638(a)(2)(B).

d.   A "finance charge," that is not itemized, and a finance charge expressed as an "annual percentage rate," using those specific terms and providing a "descriptive explanation." 15 U.S.C. §1638(a)(3) and (4). These disclosures must be made "clearly and conspicuously," and "more conspicuously than other terms, data, or information provided in connection with the transaction." 15 U.S.C. §1632(a).

e.   "The sum of the amount financed and the finance charge," expressed as "the total of payments." 15 U.S.C. §1638(a)(5).

f.  "The number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. §1638(a)(6).

g.  The "total sale price...which shall be the total of the cash price of the property or services, additional charges, and the finance charge." 15 U.S.C. §1638(a)(7).

h.  Any amounts that may be imposed by a creditor for a late payment, other than a deferral or extension charge. 15 U.S.C. §1638(a)(10).

i.  The right to rebates or penalties in connection with refinancing or prepayment of the loan. 15 U.S.C. §1638(a)(11). See also 15 U.S.C. §1638(a)(12) (requiring notice regarding "nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties.").

103.  The creditor must also provide the obligor with notice of a three-day right to rescind the transaction that is disclosed "clearly and conspicuously," along with two copies of the required rescission forms. 15 U.S.C. § 1635(a).

104.  Upon information and belief, SUNco forged Ms. Simmons's and Ms. Lauture's signatures and obtained loans in their names. These forged loans, upon information and belief, would be payable in more than four installments for the respective roof and solar projects and require payment of a finance charge. Upon further information and belief, SUNco regularly extends this type of consumer credit to other individuals. The credit transaction is "initially payable on the face of the evidence of indebtedness" to SUNco. Thus, SUNco is a "creditor" within the meaning of TILA. 15 U.S.C. §1602.

105.  Defendant SUNco did not provide either Plaintiff with any written agreement or document prior to the consummation of both Ms. Lauture and Ms. Simmons' purported loans. SUNco failed to provide the mandatory written disclosures, including, but not limited to, the "clear

and conspicuous" "annual percentage rate" and "finance charge" disclosures, and written notice of a right to rescind as required by 15 U.S.C. §§ 1632 and 1638. Defendant SUNco violated its obligations to disclose or clearly disclose credit terms in writing in violation of TILA.

106.    Due to Defendant SUNco's omissions, Plaintiffs were not provided with the "meaningful disclosure of credit terms" that would protect them from unfair practices and allow them to make informed credit decisions. SUNco's failure to provide the mandated disclosures violates TILA, 15 U.S.C. §§ 1632, 1638.

107.    As a result of these violations, Plaintiffs are entitled to actual and statutory damages, equitable relief in the form of cancellation or rescission of the subject contracts, and reasonable attorneys' fees and costs, and interest. 15 U.S.C. §164.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE TRUTH IN LENDING ACT

(As for Plaintiff Lauture Against EnerBank and As for Plaintiff Simmons Against Mosaic and WebBank)

108.    Plaintiffs reallege and incorporate all foregoing facts and allegations as if fully set forth herein.

109.    This is a consumer protection action for rescission and damages under TILA, 15 U.S.C. §§ 1601-02.

110.    TILA was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a).

111.    TILA governs the conduct of "creditors," defined as a person who both "regularly extends...consumer credit, which is payable by agreement in more than four installments or for

which the payment of a finance charge is or may be required, and is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness, or, if there is no such evidence of indebtedness, by agreement." 15 U.S.C. §1602.

112.    Mosaic, WebBank, and EnerBank are creditors within the meaning of TILA as they both regularly extend credit which is payable in more than four installments and for which payment of a finance charge is typically required. 15 U.S.C. § 1602.

113.    Upon information and belief, Defendant EnerBank holds an agreement that purports to require Ms. Lauture to repay it in more than four installments for loans extended to her that includes a finance charge. Upon information and belief, EnerBank participated in a scheme with SUNco to extend credit to Plaintiff Lauture without her knowledge or consent.

114.    Upon information and belief, Defendants Mosaic and WebBank hold an agreement that purports to require Ms. Simmons to repay them in more than four installments for loans extended to Ms. Simmons that include a finance charge. Upon information and belief, Mosaic and WebBank participated in a scheme with SUNco to extend credit to Ms. Simmons without her knowledge or consent.

115.    TILA mandates that lenders accurately disclose certain "costs of credit" associated with transactions at the time of their consummation. Specifically, pursuant to 15 U.S.C. §1638(b), Defendants Mosaic, WebBank,and EnerBank must disclose to consumers the following information in writing, *prior to the extension of credit*":

      a. "The identity of the creditor required to make disclosure." 15 U.S.C. § 1638(a)(1).

      b. The "amount financed," specifically using that term and providing a "descriptive explanation." 15 U.S.C. § 1638(a)(2)(A).

c.  "[A] statement of the consumer's right to obtain, upon a written request, a written itemization of the amount financed," with "yes/no" spaces included for the consumer to accept or reject this option. 15 U.S.C. § 1638(a)(2)(B).

d.  A "finance charge" that is not itemized, and a finance charge expressed as an "annual percentage rate," using those specific terms and providing a "descriptive explanation." 15 U.S.C. §§ 1638(a)(3) and (4). These disclosures must be made "clearly and conspicuously," and "more conspicuously than other terms, data, or information provided in connection with the transaction." 15 U.S.C. § 1632(a).

e.  "The sum of the amount financed and the finance charge," expressed as the "total of payments." 15 U.S.C. § 1638(a)(5).

f.  "The number, amount, and due dates or period of payments scheduled to repay the total of payments." 15 U.S.C. § 1638(a)(6).

g.  The "total sale price...which shall be the total of the cash price of the property or services, additional charges, and the finance charge." 15 U.S.C. § 1638(a)(7).

h.  Any amounts that may be imposed by a creditor for a late payment, other than a deferral or extension charge. 15 U.S.C. § 1638(a)(10).

i.  The right to rebates or penalties in connection with refinancing or prepayment of the loan. 15 U.S.C. § 1638(a)(11). See also 15 U.S.C. § 1638(a)(12) (requiring notice regarding certain information about "nonpayment, default, the right to accelerate the maturity of the debt, and prepayment rebates and penalties.").

      j.   The creditor must also provide the obligor with notice of a three-day right to rescind the transaction that is disclosed "clearly and conspicuously," along with two copies of the required rescission forms. 15 U.S.C. § 1635(a).

116.    Neither Defendants Mosaic, WebBank, or SUNco acting on their behalf, provided Ms. Simmons, nor did Defendant EnerBank or SUNco acting on their behalf, provide Ms. Lauture with any written documents or disclosures prior to the bills they received for payments of their respective purported loans with Mosaic/ WebBank, and EnerBank. Eventual disclosures such as the finance charge and APR were not made to Plaintiffs until many months after the work had been completed and the respective loans purportedly taken. Such disclosures do not allow for the meaningful consumer credit decisions contemplated by TILA.

117.    Thus, Defendants Mosaic and WebBank failed to provide Ms. Simmons and EnerBank failed to provide Ms. Lauture with the mandatory TILA disclosures, including, among others, the "clear and conspicuous" "annual percentage rate" and "finance charge" disclosures and written notice of a right to rescind, in violation of the TILA requirements in 15 U.S.C. §§ 1638, 1632, and 1635.

118.    Due to the Defendants' TILA violations, Plaintiffs were not provided with a "meaningful disclosure of credit terms" designed to protect them from unfair practices and allow them to make informed credit decisions.

119.    As a result of Defendants Mosaic's and WebBank's failures to provide necessary TILA disclosures to Ms Simmons and Defendant EnerBank's failure to provide necessary TILA disclosures to Ms. Lauture, Plaintiffs are entitled to actual and statutory damages, equitable relief in the form of cancellation or rescission of the subject contracts, reasonable attorneys' fees and costs, and interest their respective lenders. 15 U.S.C. § 1640.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE FAIR CREDIT REPORTING ACT**

(As for Plaintiff Lauture Against EnerBank and SUNco and As for Plaintiff Simmons Against Mosaic, and WebBank and SUNco)

120.    Plaintiffs reallege and incorporate all foregoing facts and allegations as if fully set forth herein.

121.    Defendants have violated the Fair Credit Reporting Act ("FCRA") by willfully and/or negligently using and obtaining Plaintiffs' consumer credit reports without a statutorily permissible purpose. 15 U.S.C. §§ 1681b(f), 1681-n, 1681-o. Defendants obtained Plaintiffs' credit reports using forgery and upon false pretenses. *Id.*

122.    Upon information and belief, Defendants' willful and/or negligent conduct includes, but is not limited to, the following:

    a.    Continuing to provide and give sales agents access to electronic tools that allow them to obtain Plaintiffs' credit reports without Plaintiffs' knowledge or consent;

    b.    Failing to adopt policies, procedures, and practices that would prevent sales agents from obtaining Plaintiffs' credit reports without Plaintiffs' consent;

    c.    Failing to train and supervise sales agents to ensure that they would not obtain consumers', including Plaintiffs', credit reports without the consent of Plaintiffs and other consumers;

    d.    Failing to regulate and discipline sales agents to ensure that they would not obtain consumers', including Plaintiffs', credit reports without the consent of Plaintiffs and other consumers;

e.  Employing quotas and/or other sales goals and metrics that incentivize sales agents to pull credit reports for Plaintiffs and other consumers without the consent of Plaintiffs and such other consumers.

123.  Defendants' willful and/or negligent corporate action and/or inaction proximately caused damage to Plaintiffs.

124.  As a result of these violations of the FCRA, Plaintiffs are entitled to actual and statutory damages, punitive damages, equitable relief returning and destroying Plaintiffs' credit data which was unlawfully obtained by Defendants, reasonable costs and attorneys' fees, and interest. 15 U.S.C. §§ 1681-n, 1681-o.

**FOURTH CAUSE OF ACTION**

**RACE AND AGE DISCRIMINATION IN VIOLATION OF THE EQUAL CREDIT OPPORTUNTITY ACT**

(As for Plaintiff Lauture Against EnerBank and SUNco and As for Plaintiff Simmons Against Mosaic, and WebBank and SUNco)

125.  Plaintiffs reallege and incorporate all of the foregoing facts and allegations as if fully set forth herein.

126.  The Equal Credit Opportunity Act ("ECOA") prohibits creditors from engaging in discriminatory practices against applicants for credit transactions "on the basis of race, color, religion, national origin, sex or marital status, or age." 15 U.S.C § 1691(a).

127.  The ECOA protects "applicant" members of these protected classes who seek an extension of credit from a creditor. 15 U.S.C §§ 1691(a), (b). Federal regulations further explain that an "[a]pplicant means any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2(e).

128.    Whereas both Ms. Simmons and Ms. Lauture are Black women aged 75 and 73 respectively have been informed that they received an extension of credit, both Plaintiffs are "applicant" members of the age and race classes protected under the ECOA.

129.    The ECOA prohibits discrimination by "creditors," defined as any party that permits applicants to purchase services while deferring payment for those services by extending or arranging for the extension of credit, or that acts as an assignee of an original creditor. 15 U.S.C § 1691a(e).

130.    Defendants SUNco, EnerBank, Mosaic, and WebBank are creditors because they either extended credit to one or both of the Plaintiffs, arranged for the extension of credit to one or both of the Plaintiffs, or are assignees of the original creditor in purported Home Construction Loan Agreements with either Plaintiff.

131.    Defendants deceived Plaintiffs into entering into home improvement contracts based on representations about their automatic eligibility and/or receipt of rebates and tax credits because they were senior citizens. Further evidence of the targeting of older homeowners for this fraudulent scheme can be found in complaints submitted to the Better Business Bureau, as presented above. *See also, Campbell.*

132.    Defendants' discrimination based on race is further evidenced by Defendants' targeting homeowners of color in Queens neighborhoods with significant minority populations, for "low-cost home improvement projects" that saddle them with unaffordable and predatory loan agreements, secured by liens.

133.    Evidence of Defendants' racial targeting can be found in SUNco's prior website highlighting Black customers. In addition, Defendant SUNco encouraged older, Black

homeowners like Ms. Simmons to refer neighbors, friends, and community members for SUNco's services in exchange for a $1,000.00 credit. *See also, Campbell*.

134.    Defendants specifically targeted individuals including Ms. Lauture and Ms. Simmons because of their age and race and were mistreated based on their membership in a protected class.

135.    Upon information and belief, Defendants' actions constituted race and age discrimination in violation of the ECOA wherein Defendants extended and arranged for the extension of credit to Plaintiffs on unfavorable, predatory terms.

136.    Defendants' discriminatory treatment of one or both of the Plaintiffs have caused them actual, financial and emotional harm.

137.    Plaintiffs are entitled to actual and punitive damages, declaratory and injunctive relief, and reasonable attorney's fees and costs as authorized by 15 U.S.C. § 1691e.

## FIFTH CAUSE OF ACTION

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349

(As for Plaintiff Lauture Against EnerBank and SUNco and As for Plaintiff Simmons Against Mosaic, and WebBank, and SUNco)

138.    Plaintiffs reallege and incorporate all foregoing facts and allegations as if fully set forth herein.

139.    New York GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

140.    Upon information and belief, all Defendants conduct a business and/or businesses and furnish a service and/or services as those terms are defined in New York GBL § 349.

141.    All Defendants have engaged in deceptive acts or practices that directly target consumers, including one or both Plaintiffs, using materially misleading information and practices in a manner that causes and did cause injury.

142.    Defendants engaged in deceptive acts and practices throughout their business dealings with one or both Plaintiffs, including but not limited to:

    a.    Providing Plaintiffs with false and misleading information about the terms of their consumer contracts and payment terms, including the total costs associated with SUNco's roof repair and solar panel installation projects;

    b.    Deceiving Plaintiffs into believing they were automatically eligible for federal and state subsidies and tax benefits that would significantly reduce the cost of their roof repairs and solar panel installations;

    c.    Misrepresenting the project cost by making false claims about government rebates and tax deductions;

    d.    Forging Plaintiffs' electronic signatures on Home Improvement Agreements and Home Improvement Loan Agreements without their consent or knowledge;

    e.    Failing to disclose to Plaintiffs that by consenting to Defendant SUNco's performance of work at their homes, Ms. Lauture would be liable to Defendant EnerBank and Ms. Simmons would be liable to Defendants WebBank and Mosaic for home construction loans that included inflated project costs and unaffordable interest obligations they never agreed to; and

    f.    Failing to disclose that Defendants would be taking a security interest in their homes and would be recording liens on Plaintiffs' respective properties.

143.    In fact, as with Ms. Lauture and Ms. Simmons, Defendants are generally targeting low-income, senior homeowners of color, in New York neighborhoods including those in Queens, with significant minority populations, to induce them to agree to roof repairs and solar panel installations by promising lower actual costs from governmental subsidies and tax breaks, and then placing them in predatory, unaffordable, interest-bearing home construction loans without their knowledge or consent. Evidence indicates that the Plaintiffs' experience is part of a pattern of similar conduct by Defendants. *See, e.g., GoodLeap LLC*; *Ideal Horizon Benefits*; *Campbell.*

144.    Defendants engaged in consumer-oriented deceptive acts and practices by directly targeting low-income, senior homeowners of color, including Plaintiffs, and inducing them, through fraud, to sign up for home construction projects with predatory loans that they could not afford. In addition, Defendants had consumers place their signatures on blank electronic tablets with no readable text and then used those signatures to forge electronic signatures on unauthorized loan agreements. These deceptive practices have harmed and will harm lower-income New York homeowners. Such practices are the type that could easily recur and potentially impact similarly situated consumers. Therefore, Defendants' practices are consumer-oriented and harmful to the public at large.

145.    Defendants' practices were materially misleading. Defendant Sunco's sales representatives misled one or both Plaintiffs with respect to the cost of the home improvement projects. Defendants failed to disclose to one or both Plaintiffs that they would be borrowing money at high interest rates or that their property would be encumbered by liens for years to come. Defendants deceived one or both Plaintiffs into believing that they were eligible for low-cost roof repairs and solar panel installations based on false representations about the availability of immediate tax benefits, subsidies, and rebates. Furthermore, Defendants misled one or both

Plaintiffs about the pretext for the signature on the electronic tablet, never informing them that the signature would be used for the home improvement contracts or loan agreements. These practices confuse and mislead reasonable consumers.

146.    As a direct and proximate result of Defendants' material deceptive acts and practices violating GBL § 349, Plaintiffs have suffered serious financial and emotional damages, including but not limited to:

    a.  Ms. Lauture has suffered damages including liability for contractual obligations under a Home Improvement Loan Agreement with Defendant EnerBank, totaling $45,000.00 plus a finance charge of $33,132 .00 and at least $1,940.83 in interest, along with other costs and penalties, that she never agreed to, damage to her credit, as well as damages from emotional disturbance and distress associated with fear of being held responsible for unauthorized loan payments she cannot afford on her limited, fixed income.

    b.  Ms. Simmons has suffered damages including liability for contractual obligations under a Home Improvement Loan Agreement with defendants Mosaic and WebBank, totaling $72,100.00 plus a $95,000.00 finance charge and at least $3,918.56 in interest, along with other costs and penalties that she never agreed to, and damages to her credit. Ms. Simmons also suffered damages to the Simmons Home including, but not limited to, the removal of her skylights.

    c.  Ms. Simmons has also suffered emotional disturbance and distress associated with fear of being held responsible for unauthorized loan payments she cannot afford on her limited income.

> d. Both Plaintiffs have been injured by liens placed on their properties, encumbering their respective title, without their knowledge and consent.

147.    Plaintiffs are entitled to preliminary and permanent injunctive relief, and to recover actual and treble damages, costs and attorney's fees.

## SIXTH CAUSE OF ACTION

## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349-C

(As for Plaintiff Lauture Against EnerBank and SUNco and As for Plaintiff Simmons Against Mosaic, and WebBank, and SUNco)

148.    Plaintiffs reallege and incorporate all foregoing facts and allegations as if fully set forth herein.

149.    New York GBL § 349-c imposes an additional penalty for consumer frauds committed against individuals aged sixty-five (65) and older.

150.    Ms. Lauture and Ms. Simmons were both older than sixty-five at the time of Defendants' fraudulent transactions.

151.    Defendants conduct "businesses" and/or furnish "services" within the meaning of New York GBL § 349-c.

152.    Upon information and belief, the deceptive acts and practices described above were committed against Plaintiffs Lauture and Simmons, older adults above the age of sixty-five.

153.    Plaintiffs were particularly susceptible to victimization due to their age.

154.    Defendants committed these acts with a willful disregard for Plaintiffs' rights as older adults.

155.    These deceptive practices, false representations, omissions of material facts, and forgeries, described above, caused Plaintiffs to suffer severe economic loss, real property damage,

damage to their credit, encumbrances on their primary residences, and potential strain on their limited incomes.

156. As a result of Defendants' violations of NY GBL § 349-c, Plaintiffs are entitled to restitution and equitable relief rescinding the transactions and declaring them null, void and unenforceable.

157. Furthermore, as a result of Defendants' violations of NY GBL § 349-c, Defendants are liable for the additional supplemental civil penalties payable to the Elderly Victim Fund Division of the New York State Treasury, and any further relief this Court deems just and proper.

## SEVENTH CAUSE OF ACTION

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW §§ 770-71.

(Against SUNco)

158. Plaintiffs reallege and incorporate all foregoing facts and allegations as if fully set forth herein.

159. SUNco defendants are home improvement contractors as defined by GBL § 770.

160. Under GBL § 771, contracts covering home improvement work must be prepared in writing, and the home improvement contractor must provide a copy of the written agreement to the purchaser before any work is performed.

161. Under GBL § 771, contracts covering home improvement work must contain the following terms: any and all relevant dates for starting and finishing work; a description of the work to be performed; notice that the failure to pay the construction provider may result in a lien placed on the home; notice that the purchaser may cancel the contract until the third day after signing; and information regarding insurance coverage for the work performed.

162.    SUNco never provided Plaintiffs with written copies of their home improvement contracts or with any documents containing the required information prior to the commencement of work.

    a.    Defendant SUNco failed to provide Ms. Lauture with a copy of the alleged contract, in written or electronic format, until months after the work on her home was allegedly completed.

    b.    Defendant SUNco failed to provide Ms. Simmons with a copy of the alleged contract, in written or electronic format, until approximately eight months after the work on her home was allegedly completed.

163.    As a result of these violations of GBL § 771, the contracts cannot be enforced, and Plaintiffs are not bound by the contracts' terms.

164.    Plaintiffs are also entitled to actual and statutory damages, civil penalties, injunctive relief, and reasonable attorneys' fees and costs.

## EIGHTH CAUSE OF ACTION

### VIOLATION OF NEW YORK'S UNIFORM COMMERCIAL CODE

(As for Plaintiff Lauture Against EnerBank and SUNco and As for Plaintiff Simmons Against Mosaic, and WebBank, and SUNco)

165.    Plaintiffs reallege and incorporate all of the foregoing facts and allegations as if fully set forth herein.

166.    New York's Uniform Commercial Code ("NY UCC") § 9-509 provides that the person in debt must authorize a party to file a financing statement or must have agreed to be bound by a security agreement.

167.    A security interest in property is only enforceable when the security interest describing the collateral is signed and authenticated by the debtor. NY UCC § 9-203.

168.    If the filing has not been authorized by the debtor, a filed financing statement is not effective. NY UCC § 9-510.

169.    Defendant EnerBank filed or caused to be filed an unauthorized UCC-1 Financing Statement against the Lauture Home with the City Register of the City of New York. Defendant Mosaic filed or caused to be filed an unauthorized UCC-1 Financing Statement against the Simmons home with the City Register of the City of New York.

170.    The UCC-1 Financing Statements Defendants Enerbank, Mosaic, and WebBank filed or caused to be filed alleged security interest liens against Plaintiffs' homes in favor of Defendants.

171.    Plaintiffs did not authorize the UCC-1 Financing Statements and did not sign, authenticate, or authorize any security agreement as required by NY UCC §§ 9-203 and 9-510.

172.    Defendants EnerBank, Mosaic, and WebBank's unauthorized UCC-1 filings appear in the New York City real property records as liens associated with the Lauture Home and Simmons Home, respectively. A public search of ACRIS records indicates that these properties are encumbered by liens which limit Plaintiffs' ability to use and leverage their equity in their homes.

173.    Plaintiffs Lauture and Simmons have been damaged due to Defendants' actions and are entitled to actual and statutory damages. NY UCC § 9-625.

174.    Plaintiffs are additionally entitled to declaratory relief, declaring these liens null and void and requiring their removal from Queens County Real Property Records and ACRIS.

## NINTH CAUSE OF ACTION

### FORGERY, FRAUD, AND FRAUD RISING TO THE LEVEL OF FORGERY

(As for Plaintiff Lauture Against EnerBank and SUNco and As for Plaintiff Simmons Against Mosaic, and WebBank, and SUNco)

175.    Plaintiffs repeat and reallege all of the foregoing facts and allegations as if fully set forth herein.

176.    Defendants fraudulently and knowingly induced one or both Plaintiffs to enter into a purported agreement to make roof repairs and install solar panels by making intentional misrepresentations and omitting material information, including but not limited to the following:

a.    Materially misrepresenting the cost of the work to Plaintiffs, informing them that most of the cost would be covered by automatic government rebates and subsidies;

b.    Forging Plaintiffs' electronic signatures on unauthorized loan agreements;

c.    Placing Plaintiffs in alleged loans that Plaintiffs did not know about, consent to or authorize. Additionally, these "loans" were in amounts higher than the promised project costs and included significant finance charges, costs, and penalties that were never disclosed to Plaintiffs;

d.    Failing to credit Plaintiffs with the promised automatic government rebates and subsidies;

e.    Claiming that Plaintiffs' monthly installment payments would be affordable and deferred for a promotional period while failing to disclose that they were encumbering Plaintiffs with unaffordable loans that had growing interest during the alleged "promotional period;"

f.    Claiming that Plaintiffs' energy bills would be significantly lower immediately after installation even though they knew that Plaintiffs would not have the immediate promised reductions in electrical costs;

g.  Affirming that Ms. Simmons's skylights would be protected during the course of the work, when they had no intention of doing so, and when they knew they would be removing the skylights and replacing them with wooden planks;

h.  Failing to complete repair work as promised to Plaintiffs;

i.  Recklessly disregarding Plaintiffs' respective creditworthiness and ability to pay these forged loans;

j.  Failing to discuss any contracts and any material terms with Plaintiffs, including but not limited to any obligation to arbitrate disputes.

177.    Defendants made these representations and omissions knowing they were false and deceptive at the time they were made.

178.    Plaintiffs reasonably relied on representations made by Defendant SUNco, which presented itself as a legitimate solar panel installer.

179.    Plaintiffs suffered serious injury as a result of their reliance on Defendants' intentional misrepresentations and failure to disclose the material terms of the transactions; including, but not limited to, their holding unaffordable debts, encumbrances on their homes, damage to their respective credit, and mental anguish.

180.    Defendants' intentional misrepresentations, upon which Ms. Simmons relied, also caused her actual property damage, including by removing her skylights and replacing them with wooden planks.

181.    Defendants' forgeries, other actions, material misrepresentations, and omissions were willing, intentional and knowing rendering the entire transactions with Defendants null and void.

182.    As a result of Defendants' forgeries and fraud, they are liable to Plaintiffs for actual damages, treble damages, punitive damages, costs, and attorney's fees.

183.    Plaintiffs are also entitled to declaratory relief, declaring the forged and fraudulent transactions are null, void and unenforceable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request the following relief:

A. Declaratory judgment that any and all alleged agreements between the Plaintiffs and Defendants and the related liens or UCC-1 financing statements filed by Defendants against Plaintiffs' homes are unlawful, null, void and unenforceable;

B. Equitable relief in the form of rescission of all respective transactions between the Plaintiffs and Defendants, including the termination or nullification of any security interests relating to the challenged transactions, with direction to remove related property record filings;

C. Equitable relief requiring Defendants to repair any and all damage caused to the Plaintiffs' homes;

D. Actual damages;

E. Statutory damages;

F. Compensatory damages;

G. Punitive damages;

H. Treble damages;

I. Equitable relief requiring Defendants to cease and desist contacting Plaintiffs;

J. Pre-judgment and post-judgment interest, to the extent allowable by law;

K. Plaintiffs' reasonable attorney's fees, costs, and litigation expenses; and

L.  Such other and further relief as this Court finds just and proper.

## **JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury as to all issues so triable.

Dated: New York, N.Y.
November 22, 2024

<div style="margin-left:40%">

/s/ Leslie Salzman
Leslie Salzman
Dina Doctoroff, Jacqueline Karp, Legal Interns
Cardozo Bet Tzedek Legal Services
55 Fifth Avenue, 11th Floor
New York, New York 10003
Salzman@yu.edu
Phone: (646) 592-6570
Fax: (212) 790-0256


Rruhija Matai-Sanchez, Esq.
Robert J. Seewald, Esq.
Mark Sicari, Esq.
Dianne O. Woodburn, Esq.
Of counsel to: Donna Dougherty, Esq.
JASA|Legal Services for Elder Justice
97-77 Queens Boulevard, Suite 600
Rego Park, New York 11374
Phone (718) 286-1500
Fax (929) 299-1125


Counsel for Plaintiffs

</div>