UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHEILA SIMMONS and MARIE LAUTURE,<br><br>      Plaintiffs,<br><br>    -against-<br><br>SUNCO CAPITAL, LLC; ATTYX LLC d/b/a SUNCO CAPITAL, LLC and SUNCO SOLAR; SOLAR MOSAIC LLC; WEBBANK; and REGIONS/ENERBANK USA d/b/a ENERBANK USA,<br><br>      Defendants. | Case No.: 1:24-cv-07129-BMC-LB |

**DEFENDANTS SOLAR MOSAIC LLC AND WEBBANK'S REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

Defendants Solar Mosaic LLC ("Mosaic") and WebBank ("WebBank") submit the following Reply Memorandum in support of their Motion to Compel Arbitration and Stay Proceedings. *See* ECF Nos. 21 and 29 (WebBank's Joinder).

## I.     INTRODUCTION

The Court should grant Mosaic and WebBank's motion to compel arbitration. Plaintiff argues that the arbitration agreement is unenforceable because she did not knowingly enter into the Loan Agreement, which contains the arbitration agreement. She also claims that her electronic signature on the Loan Agreement was forged. However, the evidence clearly shows otherwise.

Plaintiff primarily relies on self-serving assertions without any credible evidence to substantiate her allegations. The mere assertion that she did not sign the Loan Agreement is insufficient to overcome the presumption in favor of arbitration where there is no corroborating evidence offered by Plaintiff and where Mosaic provided substantial documentation supporting the validity of her electronic signature.

The DocuSigned Loan Agreement bears Plaintiff's electronic signature. This document serves as strong evidence of her agreement to arbitrate. In particular, Mosaic sent a link to the Loan Agreement via DocuSign to Plaintiff's email address (shebasimmons1216@yahoo.com). (ECF No. 21-2, Treece Decl. ¶ 9.) Plaintiff does not dispute that this is her email address and she contemporaneously verified this email address as her own during a recorded Welcome Call with Mosaic.

To have signed the Loan Agreement via DocuSign, Plaintiff had to have accessed her personal email account, which she admits she can do on her mobile phone. (Opp'n at 5 ("Ms. Simmons views her email on her cell phone").) Further, Plaintiff had to have opened the email from her account and clicked the "Review Document" link to be able to electronically sign it.

Plaintiff does not allege or provide evidence that SUNco's representative hacked into her email account to forge her signature, nor does she provide non-speculative allegations that he had access to her mobile phone. Without such evidence, it is improbable that someone else could have accessed her email and completed the DocuSign process on her behalf.

Additionally, Plaintiff's own statements are inconsistent with her claims. While she asserts she did not sign the Loan Agreement and only signed the SUNco representative's laptop a few times, the evidence shows that the DocuSign process was completed on a "mobile" using her personal email, which she admits to accessing via her mobile phone.

The evidence from the Welcome Call also corroborates that Plaintiff entered into the Loan Agreement. Although Plaintiff argues that the Welcome Call fails to demonstrate her informed consent to the Loan Agreement as certain financial details were not discussed during the call, the call itself provides significant support for Mosaic's position that Plaintiff was aware of Mosaic, of the loan being obtained to finance the purchase of her solar system and of the repayment obligations for the loan. During the Welcome Call, Mosaic's representative reiterated many essential terms of the loan, which were initially presented and agreed upon in the Loan Agreement. Plaintiff confirmed these terms during the call, indicating her knowledge of the Loan Agreement and her awareness and agreement to its terms.

Finally, Plaintiff's fraud claims should be resolved through arbitration. Although Plaintiff contends she is arguing fraud in the execution of the Loan Agreement, she fails to provide any evidence supporting this claim. Moreover, Plaintiff claims she did not knowingly enter into the Loan Agreement, asserting that her signatures on the SUNco representative's laptop were made under the belief that she was merely confirming her eligibility for government programs. Plaintiff's arguments align more closely with allegations of fraud in the inducement,

which must be decided by the arbitrator. She concedes that she is challenging the Loan Agreement as a whole. Such challenges must be addressed in arbitration, as mandated by Supreme Court precedent.

For these reasons, the Court should grant Mosaic and WebBank's motion, compel arbitration, and stay this action pending arbitration.

**II.**

**III. THE COURT SHOULD GRANT DEFENDANTS' MOTON TO COMPEL ARBITRATION**

**A. Plaintiff's Self-Serving Affidavit Is Insufficient Under the FAA To Challenge the Arbitration Agreement**

To challenge an arbitration agreement's existence under the FAA, plaintiffs must provide evidence to support their claims. *See Doctor's Assocs. v. Distajo*, 107 F.3d 126, 129-30 (2d Cir. 1997) (noting that the party requesting a trial under the FAA must "submit evidentiary facts showing that there is a dispute of fact to be tried."); *Palmer v. Starbucks Corp.*, 735 F. Supp. 3d 407, 418 (S.D.N.Y. 2024) (finding the plaintiff "failed to show a genuine issue of material fact to warrant a summary trial on whether he entered into the Arbitration Agreement" because his evidence substantiated the defendant's position that he agreed to arbitration, as he confirmed the email address that the defendant claims to have used to confirm his execution of the arbitration agreement was his actual email).

Mere self-serving affidavits are insufficient without corroborating evidence to warrant a trial regarding the existence of an arbitration agreement. *See e.g., Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995) (noting "it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends. If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a

dispute of fact to be tried."); *Feroce v. Bloomingdale's Inc*., No. 12-CV-5014 (SJF)(GRB), 2014 U.S. Dist. LEXIS 9119, at *16 (E.D.N.Y. Jan. 23, 2014) (compelling arbitration and rejecting the plaintiff's self-serving contention that she did not receive arbitration opt out mailings from the defendant); *Dill v. JPMorgan Chase Bank, N.A.*, 2020 U.S. Dist. LEXIS 134496, at *11-12 (S.D.N.Y. July 29, 2020) ("A party opposing arbitration may not satisfy this burden through general denials of the facts . . . but must submit evidentiary facts showing that there is a dispute of fact to be tried."); *Am. Heritage Life Ins. Co. v. Orr*, 294 F.3d 702, 710 (5th Cir. 2002) (noting that "[o]ther than their self-serving affidavits, Appellants have not submitted a whisper of evidence to support the conclusion that a jury trial is warranted under § 4 of the FAA."); *Butler v. Z&H Foods, Inc.*, 2021 U.S. App. LEXIS 26880, at *3 (5th Cir. Sep. 7, 2021) (noting that "without corroborating evidence, self-serving affidavits will not suffice to entitle the plaintiffs to a jury trial" regarding the existence of an arbitration agreement under the FAA).

Plaintiff's allegations do not sufficiently put the arbitration agreement's validity at issue because she has not provided any corroborating evidence for her otherwise self-serving claims. For example, Plaintiff claims her signature was forged onto the Loan Agreement. However, she does not provide concrete evidence to support this allegation, such as proof of digital tampering or unauthorized access to her email account.

Her self-serving declaration regarding her recollection of events from a year and a half ago is also inherently unreliable. While she alleges that the SUNCo representative exploited her due to her age, she simultaneously asserts an impeccable memory of the documents she signed and did not sign in October 2023. Further, Plaintiff's belief that she was only dealing with SUNco and not aware of a loan with Mosaic contradicts the Welcome Call, where she confirmed key loan terms with Mosaic. These inconsistencies highlight the unreliability of Plaintiff's

assertions and undermine her credibility. The lack of corroborating evidence further weakens her position, as her claims are solely supported by her own self-serving statements.

Moreover, the testimony Plaintiff provides actually corroborates Mosaic's evidence that she electronically signed the Loan Agreement via DocuSign on her mobile phone. Specifically, Plaintiff confirmed that she accesses her email on her mobile phone and claims that SUNco's representative used a laptop. (ECF No. 32-1, Plf's Aff. ¶¶ 5, 10.) Mosaic's records show that the Loan Agreement was signed on a mobile device, not a laptop. (Supp. Treece Decl. ¶ 8, Ex. C.)

Furthermore, Mosaic's records indicate that the Loan Agreement was sent to the email address shebasimmons1216@yahoo.com via DocuSign, further evidencing that Plaintiff was the individual who signed the Loan Agreement. (ECF No. 21-2, Treece Decl. ¶ 9.) Plaintiff does not dispute that the email address shebasimmons1216@yahoo.com is her email address. In fact, she provided this email address during her Welcome Call with Mosaic, which she confirms she participated in. (Plf's Aff. ¶¶ 14-15.) Thus, Plaintiff's declaration reinforces the validity of the arbitration agreement.

By failing to provide any evidence other than her self-serving and inconsistent affidavit, Plaintiff's claim lacks merit and fails to effectively challenge the validity of the arbitration agreement. The documentary evidence presented is significantly more reliable.

    **B.    The Documentary Evidence Shows Plaintiff Entered Into A Valid Arbitration Agreement**

        *1.    Plaintiff signed the Loan Agreement via DocuSign*

In this case, the evidence clearly indicates that Plaintiff willingly and knowingly signed the Loan Agreement through DocuSign, despite her claims to the contrary.

First, Plaintiff acknowledges having an email address and does not dispute ownership of the email address shebasimmons1216@yahoo.com. During the recorded Welcome Call, Plaintiff confirmed that her email address is shebasimmons1216@yahoo.com and she confirmed that she participated in the Welcome Call. (ECF No. 21-2, Treece Decl., Ex. B; Plf's Aff. ¶¶ 14-15.) These admissions are crucial as they establish a link between Plaintiff and the Loan Agreement sent via DocuSign.

The evidence shows that on October 10, 2023, Plaintiff received an email at shebasimmons1216@yahoo.com from DocuSign containing the link to review the Loan Agreement. (Supp. Treece Decl. ¶ 3, Ex. C.) To access the Loan Agreement via DocuSign, Plaintiff had to have accessed her Yahoo email account, opened the email from DocuSign, and clicked on the "Review Document" link. (*Id.* ¶ 4.)

Although Plaintiff claims she only signed the SUNco representative's laptop two or three times, Mosaic's records indicate that Plaintiff opened and signed the Loan Agreement from a "mobile" – not a laptop. (*Id.* ¶ 8.)

The records further indicate that Plaintiff used a "pre-selected style" for her electronic signature to sign the Loan Agreement. (*Id.*) When using a pre-selected style signature, a customer does not need to physically draw a signature. (*Id.*) Rather, the customer can adopt the pre-selected signature by clicking a "sign" button in the electronic document. (*Id.*)

Once Plaintiff opened the Loan Agreement, she would have clicked the "Start" button, and DocuSign would have guided her to the areas where her signature was required. (*Id.* ¶ 5.) DocuSign allows recipients to scroll through the Loan Agreement to review its contents before proceeding to sign. (*Id.* ¶ 6.)

Although Plaintiff claims she never received a copy of the Loan Agreement, DocuSign automatically completes the transaction once all required parties have signed a document and sends a copy of the signed document to all parties involved. (*Id.* ¶ 7.) In this case, Plaintiff would have received this confirmation email upon signing, sent to her email address [shebasimmons1216@yahoo.com](shebasimmons1216@yahoo.com), as that is the email address utilized during the DocuSign process. (*Id.*) This confirmation email contained a link to the Loan Agreement, which Plaintiff could access for her records. (*Id.*)

Notably, Plaintiff does not claim that SUNco's representative somehow hacked into her email account to retrieve the email from DocuSign and forge her electronic signature. Nor does Plaintiff allege that SUNco's representative created the email address [shebasimmons1216@yahoo.com](shebasimmons1216@yahoo.com) as a fake email account. Rather, Plaintiff merely claims that if any emails were sent by Mosaic, "those e-mails must have been opened and/or accessed by Mr. Lamb" – the SUNco representative. (ECF No. 32-1, Plf's Aff. ¶ 11.) She does not provide any proof or factual support for this allegation—just mere speculation. There is no evidence that anyone accessed Plaintiff's email and completed the DocuSign process on her behalf. Moreover, DocuSign's multi-step process makes it unlikely for an unauthorized signature to occur without Plaintiff's knowledge or participation.

Thus, Plaintiff's unsupported assertions are inconsistent with the documented electronic transaction. The documented evidence shows that Plaintiff knowingly and willingly signed the Loan Agreement.

        2.    *The Welcome Call confirms Plaintiff's understanding of the Loan Agreement terms*

In addition, compelling evidence from the Welcome Call and other documentary evidence demonstrates that Plaintiff had full knowledge of and willingly entered into the Loan

Agreement with Mosaic. In particular, Plaintiff admits to participating in the Welcome Call with Mosaic but contends that the Welcome Call did not mention the final Loan Agreement, thereby supporting her argument that she never signed the Loan Agreement. Plaintiff's argument lacks merit.

The Welcome Call between Plaintiff and Mosaic demonstrates that Plaintiff was fully aware she had entered into a loan agreement with Mosaic. During this call, key aspects of the loan were explicitly discussed, and Plaintiff's responses indicated her understanding and acceptance of these terms. For example, during the call, Mosaic's representative clearly informed Plaintiff that Mosaic provides "financing for the purchase of [her] solar system" and that "the purpose of this 5-minute call is to go over some key loan terms with you so you have a full understanding of your loan product." (ECF No. 21-2, Treece Decl., Ex. B.) These statements directly informed Plaintiff of the nature of the transaction. The purpose of the call was to ensure transparency and borrower comprehension, reinforcing the details of an agreement that Plaintiff had already accepted. Throughout the call, Plaintiff acknowledged and confirmed her understanding of the loan terms, indicating her ongoing consent and adherence to the Loan Agreement she had signed previously.

Further, when the representative asked if Plaintiff understood that her loan had an annual percentage rate of 7.24%, Plaintiff responded affirmatively with "yes." (*Id.*) This response indicates her acknowledgment and acceptance of this specific loan term from her Loan Agreement.

In addition, the representative informed Plaintiff of her obligation to make regular monthly payments for the next 25 years, to which Plaintiff responded, "Okay, great." (*Id.*) This

response further demonstrates her understanding and acceptance of the repayment schedule in her Loan Agreement.

Further, the statement made by Mosaic's representative during the Welcome Call, indicating that it was the final step to Plaintiff's loan application, does not imply that Plaintiff did not sign the Loan Agreement. Rather, this statement provides additional support for the fact that Plaintiff signed the Loan Agreement. In particular, the loan process involves several stages, including application and approval. (ECF No. 21-2, Treece Decl., Ex. A.) During the loan application stage, Plaintiff signed the "Home Improvement Loan Package," which included a copy of the Loan Agreement. (*Id*.) The Loan Agreement states that "Subject to our confirmation of the information in your credit application, we are prepared to make a loan (the 'Loan') of the amount you need to finance the Products and/or installation. This Note sets forth the terms of the Loan." (*Id*.) Thus, upon approval of Plaintiff's credit, the Loan Agreement Plaintiff signed became effective. (*Id*.) The Welcome Call served as the concluding step to confirm Plaintiff's understanding and acceptance of the loan terms, following the execution of the Loan Agreement. (*Id*.) Plaintiff does not dispute that she submitted the loan application.

Additionally, Mosaic's records show that Plaintiff provided personal information during the loan application process that only she would know, such as the last four digits of her social security number and her birthdate, which aligns with the information she provided during her Welcome Call. (Supp. Treece Decl. ¶ 9, Ex. D.) This evidence further supports that Plaintiff was indeed the signer of the Loan Agreement.

Finally, about a month after Plaintiff signed the Loan Agreement with WebBank and after Mosaic sent Plaintiff a Loan Closing Certificate, Plaintiff contacted Mosaic to complain about SUNco's installation work. (*Id*. ¶¶ 10-11, Exs. D-E.) During the call with Mosaic,

Plaintiff never disputed that she entered into a Loan Agreement with WebBank or that the loan terms were inaccurate. (*Id.*)

Accordingly, the evidence strongly contradicts Plaintiff's claim that she never signed the Loan Agreement.

### 3. *Plaintiff is not excused from failing to read the Loan Agreement*

Plaintiff contends she signed a document "two or three times" but believed it was to confirm her eligibility for government programs. (ECF No. 32-1, Plf's Aff. ¶ 10.) Under New York law, "a party will not be excused from his failure to read and understand the contents of a document." *Molina v. Kaleo, Inc.*, 363 F. Supp. 3d 344, 350 (S.D.N.Y. 2019). It is a well-established that "a party who signs or accepts a written contract . . . is conclusively presumed to know its contents and to assent to them . . . ." *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004) (internal quotations omitted).

Plaintiff admits to providing her signature "two or three" times. This acknowledgment indicates that she engaged with an electronic document and had an opportunity to review its contents. A signature signifies consent to the terms contained within the document, regardless of Plaintiff's subjective intent or understanding.

The Loan Agreement was presented electronically and sent to Plaintiff's email via DocuSign. Plaintiff could have taken the time to read the terms of the Loan Agreement before providing her signature. Plaintiff's failure to read the Loan Agreement does not exempt her from its terms. Courts consistently hold that a party's failure to read a document before signing does not negate their obligations under that document. *See PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1201 (2d Cir. 1996) (noting "a party's failure to read a duly incorporated document will not excuse the obligation to be bound by its terms"); *Serrano v. Cablevision Sys. Corp.,* 863 F. Supp.

2d 157, 165 (E.D.N.Y. 2012) (same).  It is reasonable to expect that an individual would exercise due diligence, especially in matters involving financial commitments such as a loan.

In sum, while Plaintiff contends that her signature was for a limited purpose, her acknowledgment of providing multiple electronic signatures and the legal obligation to review documents before signing reinforce that she is bound by the terms of the Loan Agreement.

### C. The Arbitrator Must Determine Plaintiff's Fraud Claims

Plaintiff argues that the Court must decide issues of fraud and forgery because she is claiming fraud in the execution of the Loan Agreement.  However, Plaintiff concedes that she is arguing that the "loan agreement as a whole" is void due to fraud.  Opp'n at 13.  A "challenge to the validity of the contract as a whole, and not specifically to the arbitration clause, must go to the arbitrator."  *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010) (noting "where the alleged fraud that induced the whole contract equally induced the agreement to arbitrate which was part of that contract--we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 403-04 (1967) (holding the FAA "does not permit the federal court to consider claims of fraud in the inducement of the contract generally"); *ACE Capital RE Overseas Ltd. v. Central United Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2022) ("It is well settled that a claim or defense of fraudulent inducement, when it challenges generally the enforceability of a contract containing an arbitration clause rather than specifically the arbitration clause itself, may be subject to arbitration.").

Furthermore, Plaintiff has not provided any evidence of fraud in the execution.  Rather, it appears that Plaintiff is asserting fraud in the inducement, as she contends she electronically signed a document "two or three" times but believed she was signing a document to confirm her

eligibility for government programs. Plaintiff's claims of fraud in the inducement fall squarely within the purview of the arbitrator, underscoring the need for arbitration as the appropriate forum for resolving these allegations.

## IV. CONCLUSION

For these reasons, the Court should compel arbitration and stay this action against Mosaic and WebBank pending arbitration.

DATED: March 3, 2025　　　　　　　　SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: */s/Robert J. Guite*
Robert J. Guite
Sophia L. Cahill
30 Rockefeller Plaza
New York, New York 10112
Tel.: (212) 653-8700
Fax: (212) 653-8701
rguite@sheppardmullin.com
scahill@sheppardmullin.com

*Attorneys for Defendant SOLAR MOSAIC LLC and WEBBANK*

## L.R. 7.1(c) CERTIFICATION

The undersigned hereby certifies that foregoing document complies with the word-count limitation in L.R. 7.1(c). According to the word-processing program used to prepare the document, the total word count is 3,301 words, which is less than the 3,500-word limit.

DATED: March 3, 2025　　　　By: */s/Robert J. Guite*
　　　　　　　　　　　　　　　　Robert J. Guite