UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
SHEILA SIMMONS and MARIE           :
LAUTURE,                                :
                                         :
                    Plaintiffs,         :   **MEMORANDUM DECISION AND**
                                     :   **ORDER**
        - against -               :
                                       :   24-cv-7129 (BMC)
SUNCO CAPITAL, LLC; ATTYX NEW   :
YORK LLC; ATTYX LLC; ATTYX, LLC  :
d/b/a SUNCO CAPITAL and SUNCO    :
SOLAR; SOLAR MOSAIC, LLC;       :
WEBBANK; ENERBANK USA; and     :
REGIONS/ENERBANK USA d/b/a      :
ENERBANK USA,                 :
                                         :
                    Defendants.   :
------------------------------------------------------------- X

**COGAN**, District Judge.

This case arises from loan agreements that plaintiffs allege defendants procured by

forgery and fraud.  Plaintiffs, both homeowners in Queens, allege that defendants represented to

them that Government incentives would cover most of the costs of installation of solar panels on

their residences.  In reality, defendants signed plaintiffs up for loan agreements to finance the full

costs of installation, costing much more than plaintiffs expected or were told.

The issue before the Court is whether plaintiff Sheila Simmons must resolve her claims

against defendants Solar Mosaic, LLC ("Mosaic") and WebBank in arbitration as opposed to in

this Court.[1]  Because plaintiff has provided sufficient evidence that the relevant loan agreement

is void, she is entitled to a trial on the question of whether her claims are subject to arbitration.

---

[1] Plaintiff Marie Lauture has not asserted any claims against Mosaic or WebBank.  Thus, her claims are not
impacted by this motion to compel arbitration.

**BACKGROUND**

Plaintiff Sheila Simmons has owned her home in Queens since 1986.  In Fall 2023, a SUNco representative visited plaintiff at her home and provided her with information about SUNco's solar panels.  The representative told plaintiff that because of Government incentives, she would only pay a small amount for the panels and installation.  Furthermore, she would not need to make any immediate payments because of a promotional period SUNco had.  The same representative visited plaintiff's home again a few days later and "promised that alleged tax incentives and rebates would reduce the overall cost of the installation to Ms. Simmons."

At this second meeting, the SUNco representative had plaintiff place her signature on his laptop, which he told her was to confirm her eligibility for Government rebates.  The representative did not provide plaintiff with any written documents or additional information.  Although plaintiff requested a hard copy of the document she electronically signed, and the SUNco representative stated he would email it to her, plaintiff states that she never received any paperwork from defendants before they installed solar panels on her home.

During the second meeting, the SUNco representative also initiated a phone call between himself, plaintiff, and a Mosaic representative.  The Mosaic representative told plaintiff that the call was "one of the final steps to your loan application," not a call to go over an already-decided loan agreement.  While going over some of the loan terms (notably not how much the loan would be for or any finance charges), the Mosaic representative continued to refer to a "loan offer," and never mentioned that plaintiff was entering into a loan agreement.

After defendants installed solar panels on plaintiff's home (which she alleges was done poorly, incompletely, and not in accordance with the oral agreement she had made with the SUNco representative), plaintiff received a bill from Mosaic stating that she owed $72,100 for

2

funds that Mosaic had paid to SUNco on plaintiff's behalf.  Even though this and subsequent

bills have stated that no payments are currently due, plaintiff has continued to accrue interest on

the principal balance.

According to plaintiff, Mosaic sent plaintiff a copy of the loan agreement into which she

allegedly entered for the first time in July 2024, about eight months after defendants installed

solar panels on plaintiff's home.  The agreement states that plaintiff "borrowed $72,100 from

WebBank c/o Mosaic for its payment to SUNco on her behalf, and that this loan had a $95,000

Finance Charge based on a 7.24% APR."  The loan agreement also contains an arbitration

agreement, which Mosaic and WebBank now seek to enforce.  The arbitration clause provides

that:

> Unless prohibited by applicable law, and unless you reject this Arbitration
> Provision . . . you and we agree that either party may elect to require arbitration of
> any Claim under this Arbitration Provision. . . .  "Claim" means any claim,
> dispute, or controversy between you and us (or any Related Party) that arises from
> or relates in any way to this Note (including any amendment, modification or
> extension of this Note), the Merchant Agreement, the work performed by this
> Merchant or a subcontractor; the Products, including maintenance and servicing
> of the Products; the arrangements between us and the Merchant; any of our
> marketing, advertising, solicitations and conduct relating to your request for credit
> or the Products; our collection of any amounts you owe; or our disclosure of or
> failure to protect any information about you.  "Claim" is to be given the broadest
> reasonable meaning and includes claims of every kind and nature. . . .  "Claim"
> does not include disputes about the validity, enforceability, coverage or scope of
> this Arbitration Provision or any part thereof . . . all such disputes are for a court
> and not an arbitrator to decide.  However, any dispute or argument that concerns
> the validity or enforceability of this Note as a whole is for the arbitrator, not a
> court, to decide.

Plaintiff claims that her electronic signature on this agreement was forged or obtained

through fraud because she never knowingly signed a loan agreement with defendants, rendering

void any such contract and any arbitration clause therein.

3

**LEGAL STANDARD**

When deciding a motion to compel arbitration, courts apply a standard "similar to that applicable for a motion for summary judgment." Meyer v. Uber Techs., Inc., 868 F.3d 66, 74 (2d Cir. 2017) (citation omitted).  A court "consider[s] all relevant, admissible evidence submitted by the parties and contained in 'pleadings, depositions, answers to interrogatories, and admissions on file, together with . . . affidavits,'" Chambers v. Time Warner, Inc., 282 F.3d 147, 155 (2d Cir. 2002) (quoting Fed. R. Civ. P. 56(c)), and "draw[s] all reasonable inferences in favor of the non-moving party," Nicosia v. Amazon.com, 834 F.3d 220, 229 (2d Cir. 2016).

The party seeking to compel arbitration "must make a *prima facie* initial showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (cleaned up).  Once the moving party establishes a *prima facie* showing that an agreement existed, the party "seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." Harrington v. Atl. Sounding Co., Inc., 602 F.3d 113, 124 (2d Cir. 2010).  "[I]f there is a disputed question of material fact, such that the making of the arbitration agreement is in issue, then the court shall proceed summarily to the trial thereof." Barrows v. Brinker Rest. Corp., 36 F.4th 45, 49 (2d Cir. 2022) (internal quotation marks and quotation omitted).

Courts consider four factors to determine whether to compel arbitration: "(1) whether the parties agreed to arbitrate; (2) the scope [of] the arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are arbitrable, the case should be stayed

4

pending arbitration." McAllister v. Conn. Renaissance Inc., 496 F. App'x 104, 106 (2d Cir. 2012) (citing JLM Indus., Inc. v. Stolt-Nielsen SA, 387 F.3d 163, 169 (2d Cir. 2004)).

The threshold issue is "whether the parties have indeed agreed to arbitrate." Doctor's Assocs., Inc. v. Alemayehu, 934 F.3d 245, 250 (2d Cir. 2019) (citation omitted). Courts resolve this issue by looking to state law. See Bell v. Cendant Corp., 293 F.3d 563, 566 (2d Cir. 2002); see also Schnabel v. Trilegiant Corp., 697 F.3d 110, 119 (2d Cir. 2012).[2] Like other contracts, arbitration agreements "may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 68 (2010) (citation omitted).

## AGREEMENT TO ARBITRATE

"When a motion to compel arbitration is opposed on the ground that no agreement to arbitrate has been made between the parties, a district court should give the opposing party the benefit of all reasonable doubts and inferences that may arise." Meehan v. VIPKid, No. 20-cv-6370, 2024 WL 277846, at *7 (E.D.N.Y. Jan. 25, 2024) (internal quotation marks and quotation omitted). "[I]f a party alleges the contract containing the arbitration agreement is entirely void and provides some evidence supporting his position, the party is entitled to a trial on the arbitrability issue." Id. (citation omitted). However, a plaintiff's argument that a contract is void*able*, unless made specifically about the arbitration clause itself, is an argument for an arbitrator to consider. Id.

A contract is void if there was fraud in the execution of the contract, but only voidable if there was fraud in the inducement. See McCaddin v. Se. Marine Inc., 567 F. Supp. 2d 373, 378 (E.D.N.Y. 2008). "Fraud in the execution occurs where there is a misrepresentation as to the

---

[2] Neither party asserts that any law other than that of New York should apply to this issue.

character or essential terms of a proposed contract, and a party signs without knowing or having

a reasonable opportunity to know of its character or essential terms." Hetchkop v. Woodlawn at

Grassmere, Inc., 116 F.3d 28, 31 (2d Cir. 1997) (internal quotation marks and quotation

omitted). "In order to prevail on such a defense, a party must show excusable ignorance of the

contents of the writing signed." Id. at 32 (internal quotation marks and quotation omitted).

Secretly substituting one type of document for another is an example of fraud in the execution.

Id. (citation omitted). Similarly, forging a party's signature is fraud in the execution, rendering a

contract void. Opals on Ice Lingerie v. Bodylines Inc., 320 F.3d 362, 370 (2d Cir. 2003).

In contrast, "[f]raud in the inducement indicates a misrepresentation that goes to the

subject matter underlying the transaction, but does not challenge the fact that an agreement of

some kind was reached." Gen. Media, Inc. v. Shooker, No. 97-cv-510, 1998 WL 401530, at *6

n.6 (S.D.N.Y. July 16, 1998). In other words, "if a party misrepresents that the price of cheese

will increase to induce someone into signing a contract to buy milk in bulk, that is fraud in the

inducement. But if a party assures its counterparty that it is signing a contract for cheese when it

is in fact a contract for milk, that is fraud in the execution." Kilkenny as Trustees of Constr.

Council Loc. 175 Pension Fund v. Gold Coast Pavers, Inc., No. 18-cv-7197, 2021 WL 4340827,

at *5 (E.D.N.Y. Sept. 22, 2021) (quoting MZM Constr. Co., Inc. v. N.J. Bldg. Laborers

Statewide Benefit Funds, 974 F.3d 386, 404-05 (3d Cir. 2020)).

Here, plaintiff provides sufficient evidence that the SUNco representative misrepresented

what she was signing such that plaintiff did not know or have a reasonable opportunity to know

the "true nature or contents" of the instrument she signed. Langley v. Fed. Deposit Ins. Corp.,

484 U.S. 86, 93 (1987). Plaintiff states in her affidavit submitted in opposition to defendants'

motion to compel arbitration that she only provided her signature to give her consent to

6

defendants checking her eligibility for Government incentives.  Plaintiff explains that this was the only purpose for which the SUNco representative asked for her signature, and neither he nor the Mosaic representative over the phone told plaintiff that she was signing a loan agreement. This assertion is supported by the transcript of the call with the Mosaic representative, in which he refers to the loan as an "application" and an "offer."  Furthermore, plaintiff contends that she never received a copy of what she signed from defendants, despite asking the SUNco representative for one.  Plaintiff has put forward enough evidence to raise the issue that this was not a case in which a defendant misrepresented a material fact to induce a plaintiff to enter into a contract – rather, plaintiff contends that she only ever knowingly signed a completely different document.

Despite defendants' contention to the contrary, "there is nothing to suggest that nonmovants' affidavits alone cannot – as a matter of law – suffice to defend against" a motion to compel arbitration.  Barrows v. Brinker Rest. Corp., 36 F.4th at 50 (finding plaintiff entitled to a trial on arbitrability of claims based on her declaration that she had never signed any electronic paperwork for her employer).  A party's affidavit may defeat a motion to compel arbitration and entitle the party to a trial on arbitrability when it includes a denial of signing an agreement (as opposed to the inability to recall), the facts alleged are not so contradictory to the record as to cast doubt on their plausibility, and the assertions are not speculatory or conclusory.  Id. at 51 (quotations and citations omitted).

Plaintiff has submitted such an affidavit here.  Just as the Second Circuit approved in Barrows, 36 F.4th at 51, "[i]n specific and exacting terms, and under penalty of perjury, she categorically denied ever" signing a loan agreement or any other such agreement with Mosaic or WebBank, using her cell phone to sign anything, reviewing any documents on her phone or in

7

her email, or otherwise agreeing to a loan agreement.  In her affidavit, plaintiff recites that she

signed the SUNco representative's laptop two or three times, recalls exactly what he alleged the

signatures were for, and provides the circumstances under which she gave those signatures.

Other than those signatures, she denies signing anything else or consenting to a loan agreement

in any way.  This "detailed accounting, submitted under oath, is surely 'some evidence' that

[plaintiff] did not agree to arbitration" because she did not sign the loan agreement containing

the arbitration clause.  Id. at 51-52 (footnote omitted).

Defendants' recitation of how plaintiff "would have" used DocuSign to execute the loan

agreement on her cell phone does not overcome the disputed questions of material fact as to

whether plaintiff actually signed the loan agreement and whether she knew the nature of the

document she was signing.  Defendants provide no evidence that plaintiff was the one to execute

the loan agreement using DocuSign, other than their assertion that plaintiff's email address was

linked to the signature on the loan agreement.  But as plaintiff declared in her affidavit, she is

"rarely able" to even check her emails on her cell phone without assistance from her children or

grandchildren, let alone execute a loan agreement using DocuSign.  Plaintiff "requires[ ] help to

do anything requiring the internet, such as paying [her] bills online."

Finally, the Mosaic representative's statement on the call with plaintiff and the SUNco

representative that her loan would have an annual "percentage rate of 7.24" does not imply that

plaintiff knowingly signed a loan agreement.  Throughout the call, the Mosaic representative

referred to the same "loan" as an "offer" and an "application."  This call thus does not, as

defendants assert, "demonstrate[ ] that Plaintiff was fully aware she had entered into a loan

agreement with Mosaic."

8

Because plaintiff has provided "some evidence" that the loan agreement containing the arbitration clause Mosaic and WebBank seek to enforce is void, she is entitled to a trial on whether her claims against Mosaic and WebBank are subject to arbitration.

## CONCLUSION

Mosaic and WebBank's motion to compel arbitration is denied without prejudice to renew in light of the record and evidence developed during discovery.  The parties will engage in discovery and proceed to a bench trail on the same schedule as set forth for the SUNco defendants in Judge Ross' [27] Order.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       March 5, 2025

9